# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION

| | | |
|---|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, | ) ) ) | C/A No.: 2:10-cv-____-___ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COMPLAINT** |
| JAC 2000, LLC a/k/a JAC 2000; LOYD'S CONSTRUCTION CO., INC. a/k/a LOYD'S CONSTRUCTION COMPANY a/k/a LOYD'S CONSTRUCTION CO. a/k/a LOYD'S CONSTRUCTION; SCOTT JOSEPH KRAMER; EDWARD H. EMANUEL; and JOSEPH C. GOOD, III, | ) ) ) ) ) ) ) ) ) ) ) ) ) | (*Declaratory Judgment*) (*Insurance Contract*) (*Non-Jury Trial Demanded*) |
| Defendants. | ) ) ) | |

TO: THE DEFENDANTS, JAC 2000, LLC a/k/a JAC 2000; LOYD'S CONSTRUICTION CO., INC a/k/a LOYD'S CONSTRUCTION COMPANY a/k/a LOYD'S CONSTRUCTION CO. a/k/a LOYD'S CONSTRUCTION; SCOTT JOSEPH KRAMER; EDWARD H. EMANUEL; and JOSEPH C. GOOD, III, NAMED HEREINABOVE:

The Plaintiff, Builders Mutual Insurance Company, complaining of the

Defendants, JAC 2000, LLC a/k/a JAC 2000; Loyd's Construction Co., Inc

a/k/a Loyd's Construction Company a/k/a Loyd's Construction Co. a/k/a

Loyd's Construction; Scott Joseph Kramer; Edward H. Emanuel; and

Joseph C. Good, III, respectfully shows unto this District Court as follows:

## PARTY AND JURISDICTIONAL ALLEGATIONS

1.    The Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of North Carolina, with its principal place of business located in Raleigh, North Carolina; however conducts the business of selling and providing insurance to insureds in South Carolina, in Charleston County, and in the City of Charleston under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

2.    The Defendant, JAC 2000, LLC a/k/a JAC 2000 ("JAC 2000"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Charleston County, South Carolina; and conducts its business operations in South Carolina, including within the City of Charleston, South Carolina.

3.    The Defendant Loyd's Construction Co., Inc. a/k/a Loyd's Construction Company a/k/a Loyd's Construction Co. a/l/a Loyd's Construction ("Loyd's Construction"), is, upon information and belief, a company organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of North

Charleston, South Carolina; however conducts its business operations in, among other places, Charleston County, including in the City of Charleston; and is included herein as a party-defendant since it has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on it, its heirs and successors, and its assigns.

4.    The Defendants, Scott Joseph Kramer; Edward H. Emanuel; and Joseph C. Good, III ("Mr. Kramer, Mr. Emanuel and Mr. Good"), are, upon information and belief, residents and citizens of the City of Charleston, Charleston County, South Carolina and are included herein as party-defendants in that they have a significant interest in the outcome of this litigation and any decision rendered herein should be binding on them, their successors, and their assigns.

5.    The Defendant, Scott Joseph Kramer ("Mr. Kramer"), is, upon information and belief, a resident and citizen of the City of Charleston, Charleston County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.

6.    The Defendant, Edward H. Emanuel ("Mr. Emanuel"), is, upon information and belief, a resident and citizen of the City of Charleston, Charleston County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.

7.    The Defendant, Joseph C. Good, III ("Mr. Good"), is, upon information and belief, a resident and citizen of the City of Charleston, Charleston County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.  (Messrs. Kramer, Emanuel, and Good will be collectively referred to herein as the "Homeowners" unless individual designation is required).

8.    This is a declaratory judgment action brought pursuant to Rule 57 of the *Federal Rules of Civil Procedure* and 28 *U.S.C.* §§ 2201-2202 (West Group 1993 and West Group Supp. 2005).

9.    The jurisdiction of this District Court is based upon the diversity of citizenship of the parties pursuant to 28 *U.S.C.* § 1332(a) (West Group 2005).

10.    The amount in controversy herein exceeds the sum of $75,000.00 exclusive of interest and costs.

11.    All matters and allegations herein contained are within the subject matter and personal jurisdiction of this District Court and venue is proper in this District Court and in the particular Division selected herein since the incidents giving rise to this action occurred in Charleston County, South Carolina.

## FACTUAL ALLEGATIONS
(*The Insurance Policy*)

12.    Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

13.    On or about 18 February 2006, Builders Mutual issued a commercial general liability insurance policy, Policy No. CPP 0023608 00, to JAC 2000 (the "CGL Policy") with a policy effective period running from 18 February 2006, until 18 February 2006, and, if applicable, as may have been renewed annually thereafter until such was cancelled, lapsed, or non-renewed.  (*A copy of the CGL Policy is attached hereto as **Exhibit "A"** and incorporated herein by reference.*).

14.    The CGL Policy insured JAC 2000 for certain liability risks under the insuring agreement and, in turn, excluded certain liability risks pursuant to and through various policy exclusions.    All of the terms, conditions, obligations, and duties under and pursuant to the CGL Policy are incorporated herein by reference.

15.    The CGL Policy does not include or constitute a performance bond covering work performed by JAC 2000 and/or any other insured performing operations or activities for or on behalf of JAC 2000.

16.    The CGL Policy provided, in pertinent part, in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, through **SECTION I – COVERAGES**, pursuant to **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, via Paragraph **1.** entitled **Insuring Agreement**, as follows:

> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

**b.**    This insurance applies to "bodily injury" or "property damage only if:

   **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

   **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, the "bodily injury" or "property damage" occurred, then any continuation, change[,] or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change[,] or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when an insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means the "bodily injury" or "property damage" has occurred or has begun to occur.

17.   The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to the same section, through Paragraph **2.** entitled **Exclusions**, as follows:

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.    Contractual Liability**

"Bodily injury" or "property damage" liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the

purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party, or for the cost of, the party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j.    Damage To Property**

"Property damage" to:

* * *

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired[,] or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs . . . **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

### k.    Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l.    Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m.    Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not already been physically injured, arising out of

**(1)**    a defect, deficiency, inadequacy[,] or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**    **Recall Of Products, Work[,] Or Impaired Property**

Damages claimed for any loss, cost[,] or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal[,] or disposal of:

**(1)**    "Your product";

**(2)**    "Your work; or

**(3)**    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy[,] or dangerous condition in it.

18.    The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to **SECTION V - DEFINITIONS**, as follows:

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate[,] or dangerous;

**b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.**    The repair, replacement, adjustment[,] or removal of "your product" or "your work"; or

**b.**    Your fulfilling the terms of the contract or agreement.

9.    "Insured contract" means:

* * *

f.    That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

* * *

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions;

* * *

16.    "Products-completed operations hazard":

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one site.

**(c)** When that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service maintenance, correction, repair[,] or replacement, but which is otherwise complete, will be treated as completed.

* * *

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" [which] caused it.

* * *

**21.** "Your product"

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed[,] or disposed of by:

**(a)**   You;

\* \* \*

**b.**   Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your product"; and

**(2)**   The providing of or failure to provide warnings or instructions.

\* \* \*

**22.**   "Your work"

**a.**   Means:

**(1)**   Work or operations performed by you or on your behalf; and

**(2)**   Materials, parts[,] or equipment furnished in connection with such work or operations.

**b.**   Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your work; and

**(2)**   The providing of or failure to provide warnings or instructions.

19.   The CGL Policy Policies provided, in pertinent part, in the endorsement entitled **EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work".

This endorsement applies to "your work" described in Paragraph 1. and 2. below performed by you [the named insured] or on your [the named insured's] behalf.

1.      The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.  Any spray on exterior PVC resin, or similar coating, that is utilized as the final exterior finish surface coating (commonly referred to as spray on siding).

2.      Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system, or any spray on exterior PVC resin, or similar coating, is used on any part of that structure.

20.    The CGL Policy provided, in pertinent part, in the **FUNGUS, MOLD, AND MILDEW EXCLUSION**, as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This exclusion is added under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, under Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**, and under Paragraph **2.**, **Exclusions** of **Section I – Coverage C – Medical Payments**.
>
> This insurance does not apply to:
>
> **Fungus", Mold[,] and Mildew**
>
> **(1)**    "Bodily injury", "property damage", "personal or advertising injury"[,] or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens;
>
> **(2)**    Any sums that "you" become legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time;
>
> **(3)**    Any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that "you" or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study,

contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality;

**(4)** Any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

These definitions are added to **Section V – Definitions**

"Fungus" means any of the plant-like group of organisms that does not contain chlorophyll; they derive their food either by decomposing organic matter from dead plants and animals, or by parasitic attachment to living organisms, thus causing infections and disease. The word "fungus" includes molds, mildews, musts[,] and the rusts and smuts that infect grain and other plants.

"Fungus" does not include mushrooms, a product of agriculture for human consumption.

"Mycotoxin" means a highly toxic principle produced by molds or fungi.

21. The CGL Policy provided, in pertinent part, in the endorsement entitled **EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**, as follows:

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

I.     **Damage To Your Work**

"Property damage" to "your work" arising out of or any part of it and included in the "products-completed operations hazard".

## FACTUAL ALLEGATIONS
### (*The Defective And/Or Faulty Construction*)

22.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

23.     Upon information and belief, on or about 17 June 2004, Longborough Lane, LLC, a South Carolina limited liability company, sold certain real property known as Lot 79 Longborough which is now more commonly referred to as 79 Alberta Drive, Charleston, South Carolina (the "Homeowners' Residence"), to CLC, LLC, a South Carolina limited liability company, for the sum of $105,000.00.

24.     Upon information and belief, on or about 30 December 2004, Loyd's Construction obtained a building permit from the City of Charleston solely for the purpose of undertaking construction of the foundation for the Homeowners' Residence.

25.    Upon information and belief, on or about 11 February 2005, Loyd's Construction obtained a second building permit from the City of Charleston for the purpose of undertaking construction of the Homeowners' Residence itself.

26.    Upon information and belief, on or about 22 September 2005, JAC 2000 obtained a building permit from the City of Charleston for the purpose of completing construction of the Homeowners' Residence replacing Loyd's Construction as the general contractor on the building project.

27.    Upon information and belief, on or about 24 August 2006, the City of Charleston Building Services made their final inspection of the construction of the Homeowners' Residence.

28.    Upon information and belief, the City of Charleston issued JAC 2000 a Certificate of Occupancy on 3 October 2006.

29.    Upon information and belief, sometime immediately after 3 October 2006, JAC 2000 turned the Homeowners' Residence over to CLC, LLC for its use.

30.    Upon information and belief, on or about 25 January 2007, CLC sold the Homeowners' Residence to Joel McVay Christy ("Mr. McVay") for the sum of approximately $450,000.00.

31.    Upon information and belief, Mr. McVay is the president, owner, and principal member of JAC 2000.

32.    Upon information and belief, on or about 13 June 2007, Mr. McVay sold the Homeowners' Residence to the Homeowners for the sum of $759,500.00.

33.    Prior to and during construction of the Homeowners' Residence, JAC 2000 retained several subcontractors to undertake the actual construction of the Homeowners' Residence, including, but not limited to George Tsantakis d/b/a George's Vinyl Siding; Eduar Sanchez-Arias; Derek Holmes; Birch's Heating and Air, Inc.; Kendall White d/b/a Low Country's Best Cooling; John Martin d/b/a JBM Construction; Rickey N. Brown d/b/a Brown's Custom Painting; Duain A. Mitchell, Sr., d/b/a Mitchell Plumbing; Old Charlestowne Associates, LLC; SA Floor Covering, LLC; Mike Nolan d/b/a Mike Nolan Hardwoods; Beebe Woodworks, LLC; C&K's Cabinets Plus, LLC; Lowcountry Fireplaces, Inc.; Wholesale Appliance Center, LLC, Alvin Zellous d/b/a Zellous and Sons Electric; and JR Wells Electric.

34.    Upon information and belief, after the Homeowners took possession of the Homeowners' Residence from Mr. McVay and began to live there or to lease the property, either the Homeowners or, if applicable,

their tenants began to notice various alleged construction defects and poor workmanship in the Homeowners' Residence and noticed evidence of alleged faulty workmanship and defective construction.

35. As a result of the alleged construction defects/faulty workmanship problems in the Homeowners' Residence, upon information and belief, the Homeowners complained to JAC 2000 asserting the Homeowners' Residence contained various alleged construction defects and poor workmanship resulting from serious moisture intrusion which had been caused by which was the responsibility of JAC 2000.

36. Upon information and belief, JAC 200 either completely denied any and all liability for the alleged construction defects and/or faulty workmanship in the Homeowners' Residence or was unable to repair and/or remediate the problems to the satisfaction of the Homeowners.

37. As a result of the alleged construction defects/faulty workmanship problems in the Homeowners' Residence, upon information and belief, after the Homeowners complained to JAC 2000, in turn, JAC 2000 complained to all of its various subcontractors asserting the Homeowners' Residence contained various alleged construction defects

and poor workmanship resulting from serious moisture intrusion which had been caused by which was the responsibility of one or more of the various subcontractors.

38.    Upon information and belief, one or more of the various subcontractors either completely denied any and all liability for the alleged construction defects and/or faulty workmanship in the Homeowners' Residence or were unable to repair and/or remediate the problems to the satisfaction of either JAC 2000 and/or the Homeowners.

39.    As a result of various construction defects found in the Homeowners' Residence, the Homeowners brought a civil suit against JAC 2000 in the Charleston County Court of Common Pleas in an action entitled, *Scott Joseph Kramer, Edward H. Emanuel, and Joseph C. Good, III v. JAC 2000, LLC; CLC, LLC; Lloyd's Construction Company, LLC, George Tsantakis d/b/a George's Vinyl Siding, Eduar Sanchez-arias, Derek Holmes, Birch's Heating and Air, Inc., Kendall White d/b/a Low Country's Best Cooling, John Martin d//b/a JBM Construction, Rickey N. Brown d/b/a Brown's Custom Painting, Duain A. Mitchell, Sr., d/b/a Mitchell Plumbing, Old Charlestowne Associates, LLC, SA Floor Covering, LLC, Mike Nolan d/b/a Mike Nolan Hardwoods, Beebe Woodworks, LLC, C&K's Cabinets Plus, LLC, Lowcountry Fireplaces, Inc, Wholesale Appliance Center, LLC,*

*Alvin Zellous d/b/a Zellous and Sons Electric, JR Wells Electric*, Charleston County Court of Common Pleas, Civil Action No. 2009-CP-10-6498, filed October 15, 2009 (the "Underlying Action") (*A copy of the Complaint in the Underlying Complaint and all relevant amended pleadings and/or , cross-claims filed in the Underlying Action are collectively attached hereto as* **Exhibit "B"** *and incorporated herein by reference*).

40.    The Complaint in the Underlying Action asserted claims against JAC 2000 for (a) negligence (*UA Complaint*, paras. 1-2, 25-44, 46-54 including all subparts therein), (b) breach of the warranties of habitability, against latent defects, workmanlike services, fitness for a particular purpose, and merchantability/service ability (*UA Complaint*, paras. 1-2. 25-44, 56-59); and (c) violations of the *South Carolina Unfair Trade Practices Act* as set forth in *S.C. Code Ann.* § 39-5-10, *et seq.* (Law. Co-op 1985 and West Group 2004).  (*UA Complaint*, paras. 1-2, 25-44, 66-71).

41.    The Complaint in the Underlying Action alleged that, as a result of JAC 2000's faulty workmanship and defective construction at the Homeowners' Residence, the Homeowners had been significantly damaged due to, among other things, numerous construction defects and

faulty workmanship which need to be replaced, repaired, and/or corrected, the diminished value of the Homeowners' Residence, and the significantly increased maintenance and reconstruction costs.

42.    The Homeowners together have sought unspecified actual, punitive, and treble damages against JAC 2000, together with attorneys' fees, litigation costs, pre-judgment interest, and post-judgment interest.

43.    The Homeowners alleged examples of JAC 2000's faulty workmanship and defective construction included, but were not limited to, the following:

> (a)    improper supervision of subcontractors;
>
> (b)    failure to construct the Homeowners' Residence in accordance with applicable building codes and industry standards;
>
> (c)    failure to property insulate and/or protect mechanically cooled interior space form exposure to ambient moisture laden air thereby causing damage to interior fixtures and finishes and promoting microbial growth;
>
> (d)    improper and faulty installation of siding;
>
> (e)    improper installation of the stucco and exterior wall system;
>
> (f)    improper and/or incorrectly installed roofing materials;
>
> (f)    improper installation of hardwood floors;
>
> (g)    improper and faulty installation of stucco cladding;

(h)    improper installation of flashings;

(i)    improper and/or fault framing of the Homeowners' Residence; and

(j)    improper and faulty installation of HVAC system.

44.    On or about 21 December 2009, Loyd's Construction Company asserted a crossclaim against JAC 200 for equitable and/or contractual indemnification (*Loyd's Construction Crossclaim*, paras. 21-21) arising out of the construction of the Homeowners' Residence.    (*A copy of the Complaint, all relevant amended pleadings, and all relevant cross-claims filed in the Underlying Action are collectively attached hereto as* **Exhibit "B"** *and incorporated herein by reference*).

45.    JAC 2000, in November, 2009, tendered the claim to Builders Mutual and, in turn, requested Builders Mutual to provide it with a legal defense and indemnification vis-à-vis the claims asserted against is by the Homeowners and arising out of the Homeowners' Residence.

46.    Builders Mutual has been providing JAC 2000 with a legal defense in the Underlying Action; however such provision of a legal defense is being done under a full and complete reservation of rights.

## FIRST CAUSE OF ACTION
### (*Declaratory Judgment – Insurance Policy*)

47.    The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for any alleged "property damage" expected or intended from the standpoint of the insured.

48.    The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for alleged "property damage" known by an insured or designated employee to have existed prior to the commencement of the applicable policy period.

49.    The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for any alleged "breach of contract" by an insured.

50.    The CGL Policy covers "property damage" only when and if such "property damage" is caused by an "occurrence" as that term is defined in the CGL Policy.

51.    The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, alleged "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

52.    The Homeowners' Residence constitutes the "your work" of JAC 2000.

53.    The CGL Policy does not provide liability insurance coverage for "property damage" expected or intended from the standpoint of any insured.

54.    The CGL Policy does not provide liability insurance coverage for "property damage" known by any insured and/or an appropriately designated employee to have existed prior to the commencement of the applicable policy period for the CGL Policy.

55.    The CGL Policy does not provide liability insurance coverage for any "breach of contract" by any insured.

56.    The CGL Policy covers "property damage" only when and if such "property damage" is caused by an "occurrence" as that term is defined in the CGL Policy.

57.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

58.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your product" arising out of it or any part of it.

59.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

60.    The CGL Policy defines the term "your work" to constitute work or operations performed by JAC 2000 or by some third-party on behalf of JAC 2000 and specifically includes material, parts, and/or equipment furnished by JAC 2000 or by some third-party on behalf of JAC 2000 in connection with JAC 2000's work or operations and/or the third-party's work or operations on behalf of JAC 2000.

61.    The Homeowners' Residence constituted the "your work" of JAC 2000 as that phrase was defined in the CGL Policy.

62.    The CGL Policy defines the term "your product" to constitute any goods or products manufactured, sold, handled, distributed, and/or disposed of by JAC 2000, including any containers, materials, parts, and/or equipment furnished in connection with such goods and/or products.

63.    The Homeowners' Residence constituted the "your product" of JAC 2000 as that phrase was defined in the CGL Policy.

64.     The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "impaired property" arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a delay or failure by JAC 2000 and/or anyone acting on JAC 2000's behalf to perform a contract or agreement in accordance with its terms.

65.     The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any sums which JAC 2000 become legally obligated to pay as damages because of the:

> The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.

66.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any sums that JAC 2000 become legally obligated to pay as damages because of:

> Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

67.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any sums that JAC 2000 becomes legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss at any time".

68.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, "bodily injury" and/or "property damage" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

69.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that either JAC 2000 or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality.

70.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

71.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, " '[p]roperty damage" to "your work" arising out of or any part of it and included in the :products-completed operations hazard.' "

72.    The CGL Policy, as interpreted by South Carolina law, does not permit insurance coverage for JAC 2000 and/or any of its subcontractors or others doing work on behalf of JAC 2000 for the removal, repair, and/or replacement of defective work whether done by JAC 2000 and/or by someone or some third-party on JAC 2000's behalf.

73.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and defective construction performed by JAC 2000 and/or on behalf of JAC 2000 by one or more subcontractors and/or sub-subcontractors at the Homeowners' Residence does not constitute an "occurrence" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

74.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of JAC 2000 at the Homeowners' Residence does not constitute "property damage" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

75.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of JAC 2000 at the Homeowners' Residence, even if it did constitute an "occurrence" under the CGL Policy, does not constitute "property damage" as that term is defined in the CGL Policy.

76.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of JAC 2000 at the Homeowners' Residence, even if it did constitute an "occurrence" under the CGL Policy and even if it did

constitute "property damage" as that term is defined in the CGL Policy, that such damage was still excluded from coverage since it was "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" as those terms are defined by the CGL Policy.

77.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Fungus, Mold[,] and Mildew Exclusion***, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

78.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Exclusion – Exterior Insulation And Finish Systems***, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

79.    Builders Mutual is entitled to a declaration by this District Court that the CGL Policy, pursuant to the endorsement entitled ***Exclusion – Damage To Work Performed By Subcontractors On Your Behalf***, to the extent this endorsement may be applicable, completely eliminated any and all liability insurance coverage for any and all subcontractors contracted by JAC 2000 to provide materials, goods, or perform services or work on the Homeowners' Residence.

80.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Contractual Liability*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

81.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Expected Or Intended Injury*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

82.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Property*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

83.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Your Product*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

84.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Your Work*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

85.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Impaired Property Or Property Not Physically Injured*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

86.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Recall Of Products, Work, Or Impaired Property*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

87.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all applicable exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured any insurance coverage regarding the claims of property damage set forth by the Homeowners in the Underlying Action.

88.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense to the Homeowners' claims in the Underlying Action.

89.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured indemnification for the Homeowners' claims in the Underlying Action.

WHEREFORE, the Plaintiff, Builders Mutual Insurance Company, having fully complained against the Defendants, JAC 2000, LLC a/k/a JAC 2000; Loyd's Construction Co., Inc a/k/a Loyd's Construction Company a/k/a Loyd's Construction Co. a/k/a Loyd's Construction; Scott Joseph Kramer; Edward H. Emanuel; and Joseph C. Good, III, respectfully requests this District Court to:

      a.    Declare that the faulty workmanship and construction defects claims asserted either by Homeowners and/or Loyd's Construction against JAC 2000 in the Underlying Action and arising out of and/or related to the construction of the Homeowners' Residence do not constitute "property damage" as defined by the CGL Policy and the applicable law;

b.  Declare that the faulty workmanship and construction defects claims asserted by either by Homeowners and/or Loyd's Construction against JAC 2000 and/or Mr. Christy or any other insured in the Underlying Action and arising out of and/or related to the construction of the Homeowners' Residence do not constitute an "occurrence" as defined by the CGL Policy and the applicable law;

c.  Declare that the faulty workmanship and construction defects claims asserted by either by Homeowners and/or Loyd's Construction against JAC 2000 and/or Mr. Christy or any other insured in the Underlying Action and arising out of and/or related to the construction of the Homeowners' Residence are excluded by one or more sections of Exclusions "*a*", "*b*", "*j*", "*k*", "*l*", "*m*" and/or "*n*" of the CGL Policy;

d.  Declare that the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to JAC 2000 or any other insured for the faulty workmanship and construction defects claims asserted against JAC 2000 by either the Homeowners and/or Loyd's Construction in the Underlying Action and arising out of construction of the Homeowners' Residence;

e.  Declare that the CGL Policy, particularly the ***Fungus, Mold[,] and Mildew Exclusion***, and others specifically named herein, issued by Builders Mutual Insurance Company covering JAC 2000 or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to JAC 2000 or any other insured for the faulty workmanship and

construction defects claims asserted against JAC 2000 or any other insured by either the Homeowners and/or Loyd's Construction in the Underlying Action and arising out of construction of the Homeowners';

f.  Declare that the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 or any other insured does not require Builders Mutual Insurance Company to provide a legal defense to JAC 2000 or any other insured for the faulty workmanship and construction defects claims asserted against JAC 2000 or any other insured by either the Homeowners and/or Loyd's Construction in the Underlying Action and arising out of construction of the Homeowners' Residence;

g.  Declare that the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 or any other insured does not require Builders Mutual Insurance Company to provide indemnification to JAC 2000 or any other insured for the faulty workmanship and construction defects claims asserted against JAC 2000 and/or Mr. Christy or any other insured either by the Homeowners and/or Loyd's Construction in the Underlying Action and arising out of construction of the Homeowners' Residence;

h.  For the costs and disbursements of this action; and

i.  For such other relief as this District Court deems just and proper under the circumstances.

Respectfully submitted:

*NEXSEN PRUET, LLC*


By:     **s/Stephen P. Groves, Sr.**

Stephen P. Groves, Sr., Esquire
Federal I.D. No.    2490
205 King Street, Suite 400
Charleston, South Carolina  29401
Telephone:  843.720.1725
Telecopier:  843.720.1777
E-Mail:  SGroves@nexsenpruet.com

*Attorneys for the Plaintiff,*
*Builders Mutual Insurance Company*

Charleston, South Carolina

22 April 2010

NPCHAR1:564103.1-PG-(SPG) 032595-00088